IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KODY LEE KAPLON,

                Petitioner,

        vs.

DAVID DAVEY, Warden, California State
Prison, Corcoran,[1]

              Respondent.

No. 2:14-cv-00729-JKS

MEMORANDUM DECISION

Kody Lee Kaplon, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Kaplon is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at California State Prison, Corcoran. Respondent has answered, and Kaplon has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On May 18, 2009, Kaplon was charged with attempted murder (count 1), sexual intercourse with a child under ten years of age (count 2), sexual penetration by a foreign object of a child under ten years of age (count 3), two counts of oral copulation of a child under ten years of age (counts 4 and 5), kidnapping with a special allegation that the victim was under the age of fourteen years (count 6), and child endangerment (count 7). The information also alleged with respect to all counts that Kaplon personally inflicted great bodily injury and that the counts were violent and serious felonies. Kaplon pled not guilty and denied the special allegations. On

---

[1]      David Davey, Warden, California State Prison, Corcoran, is substituted for Daniel Paramo, Warden, R.J. Donovan Correctional Facility. FED. R. CIV. P. 25(c).

direct appeal of his conviction, the California Court of Appeal laid out the following facts

underlying Kaplon's case:

> The facts may be briefly stated.  On the night of March 1, 2009, [Kaplon] came to
> Carolyn Souza–Myers's apartment in Yreka; he was intoxicated.  [Kaplon] acted
> "weird," saying "kind of off-the-wall things about being in the secret service."  He also
> said he had come by to say good-bye because he was "going to jail for a long, long time,"
> although he did not know how long or how he was going to get there.  Eventually,
> [Kaplon] was asked to leave.
>
> After midnight on March 2, [Kaplon] arrived at P.S.'s apartment.  At the time,
> P.S.'s great-niece—the victim in this case (referred to as Jane Doe)—who was three
> years old, was sleeping in the living room just off the kitchen.  [Kaplon] kept going back
> out to his car to get beer, but eventually, around 4:00 or 4:30 a.m., P.S. gave [Kaplon]
> some methamphetamine and told him to smoke it and sober up so P.S. could go to bed.
> P.S. then fell asleep without seeing [Kaplon] to the door as he usually did.
>
> The victim's great-grandmother (P.S.'s mother), who was also living in the
> apartment at the time, awoke to hear the victim saying, "No, I don't want to go with you.
> I don't like you."  She got up and left her bedroom and almost crashed into the victim's
> mother and father as they came out of their room in the apartment.  Everyone began
> looking for the victim, who was not in her bed.  The victim's mother ran out the door and
> saw [Kaplon] driving away with the victim on his lap.
>
> James Ragsdale lives on Humbug Creek Road, about 20 to 30 minutes outside of
> Yreka.  One morning in March 2009, around 10:30 or 11:00 a.m., [Kaplon], who looked
> like he had rolled down a hill in the mud, knocked on Ragsdale's door and told Ragsdale
> he had rolled his pickup.  Ragsdale gave [Kaplon] a ride home.
>
> George Flippen found [Kaplon's] car later that day "high centered" over the side
> of a road in a remote area.  He followed some footprints in the mud and found the victim
> down a hill off the road.  She had mud all over her.
>
> In an interview with a Child Protective Services worker the same day she was
> found, the victim said that "Jack" had taken her in his car, buried her, choked her, licked
> her vaginal area, touched her vaginal area with his fingers, put his penis in her mouth,
> and put his penis in her vagina.  The victim ultimately said it was [Kaplon] who took her.
>
> [Kaplon] was ultimately charged with attempted murder, kidnapping, sexual
> intercourse with a child under the age of 10, two counts of oral copulation with a child
> under the age of 10, two counts of committing a lewd and lascivious act on a child under
> the age of 14, inflicting cruel and inhuman corporal punishment on a child, and child
> endangerment, along with various enhancement allegations.
>
> Before trial,[FN1] [Kaplon] filed a motion to change venue, asserting that "due to the
> prejudicial publicity surrounding the case, there is a reasonable likelihood that Mr.
> Kaplon can not [sic ] receive a fair and impartial trial in Siskiyou County."  In their
> written opposition to the motion, the People argued that the motion should be denied
> "with the option of being renewed should voir dire indicate the impossibility of
> empaneling a jury without unfair prejudice."  (Bolding and capitalization omitted.)  At

2

the hearing on the motion, the prosecutor reiterated the People's request that the court "deny the motion without prejudice," explaining that "[i]t is completely appropriate.  We can revisit this question at the time of jury voir dire based upon the responses that individual jurors, members of the community might have."

> FN1.   [Kaplon] originally filed the motion in January 2010, and the People opposed it on the ground it was defective because it lacked a supporting declaration.  In response, in February 2010 [Kaplon] withdrew the motion and refiled it with the required declaration.

In July 2010, Judge Langford denied the motion.  (At that time, it had already been determined that Judge Masunaga would be the trial judge in the case.)  Judge Langford explained his ruling as follows:

> "[I]n ruling and announcing and explaining my ruling today, I want to start out by saying that this court is, at this point, going to be denying Mr. Kaplon's motion for change of venue.  Knowing that the issue of venue and the appropriateness of Siskiyou County as the venue in this case will need to be an issue that the court is mindful of, and an issue that certainly may need to be further addressed by the trial court during the jury selection process should it appear at that point appropriate to do so.

> "[¶] . . . [¶]

> "Certainly, the defense motion and the matters in support of it shows [sic ] that there is a logical and legitimate concern as to whether a fair and impartial trial in this matter can be had in Siskiyou County.  But that concern does not at this point rise to the level of concern above that of a mere possibility of an unfair trial.

> "Therefore, I have determined that there is not, at this point, a showing of the reasonable likelihood as required . . . .  [T]he defense motion is therefore denied, and the issue of a possible change of venue may be taken up again if and when, in the course of the jury selection process, it appears to the court that this may be appropriate.

> "I would note—and it's very, very clear, and I want to make it very clear to all in attendance, that under the law, young Mr. Kaplon, as he sits here today, is presumed innocent, and he retains that presumption of innocence.  And unless and until he is proven guilty as part of a trial process that in all aspects complies with each and every requirement of the law, the trial in this matter will proceed in Siskiyou County only if the trial court is satisfied that the jury can fairly and impartially perform its duties related to the charges against this young man.

> "At this point, however, I have not been persuaded by the defense argument that there is a reasonable likelihood that a fair and impartial trial cannot be held in Siskiyou County.  Therefore, as I said and will reiterate, the defense motion at this point is denied."

Jury selection began a year later, on July 12, 2011.  Each side had 20 peremptory challenges.  Defense counsel used only 10 peremptory challenges before accepting the jury panel.  Defense counsel then used another four peremptory challenges before accepting the four alternate jurors.  At no time during or after the jury selection process did [Kaplon] renew his motion for change of venue.

The jury found [Kaplon] guilty of all charges and found all enhancement allegations were true.  The trial court sentenced him to a determinate term of 14 years and a consecutive indeterminate term of 87 years to life in prison.

*People v. Kaplon*, No. C069497, 2013 WL 120847, at *1-3 (Cal. Ct. App. Jan. 10, 2013).

Through counsel, Kaplon appealed his conviction, arguing that: 1) the trial court erred in denying his motion for a change of venue; 2) his rights to due process and to present a defense were violated when the Superior Court failed to retain all of the jurors' written questionnaires and the Court of Appeal denied his application for a settled statement as to the destroyed questionnaires of the unseated jurors; and 3) the trial court erred as to counts 2 through 6 by failing to sua sponte instruct the jury pursuant to CALCRIM No. 359, Corpus Delicti.[2]  The Court of Appeal unanimously affirmed the judgment against Kaplon in a reasoned, unpublished decision issued on January 10, 2013.  *Kaplon*, 2013 WL 120847, at *5.  Kaplon petitioned for review in the California Supreme Court, which was summarily denied on March 20, 2013.

Kaplon, proceeding *pro se*, then filed a petition for a writ of habeas corpus in the superior court.  In that petition, he alleged: 1) "Andrew Marx, my public defender, failed to bring up change in venue after voir dire;" 2) "there was a conflict of interest with Mr. Marx's investigator Rob Shelton;" 3) "there was semen found on the victim that did not match my D.N.A. profile,

---

[2]      "Like most American jurisdictions, California adheres to the 'corpus delicti' rule, under which the corpus delicti—essentially, the fact that a crime has been committed—cannot be proved based solely on extrajudicial statements of the defendant."  *Rayyis v. Superior Court*, 35 Cal. Rptr. 3d 12, 13 (Cal. Ct. App. 2005) (citing *People v. Alvarez*, 46 P.3d 372, 373 (Cal. 2002)).

but was ignored" by the prosecutor; and 4) "I was seen by the jurors in handcuffs and shackles." The superior court denied the petition on May 28, 2013, with citations to *In re Waltreus*, 397 P.2d 1001, 1005 (Cal. 1965) (barring relitigation on habeas of claims previously raised and rejected on direct appeal) and *In re Dixon*, 264 P.2d 513, 514 (Cal. 1953) (holding that habeas relief is unavailable if "the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction"). Likewise, the court cited to *People v. Duvall*, 886 P.2d 1252, 1258 (Cal. 1995) and *In re Swain*, 209 P.2d 793, 796 (Cal. 1949). *In re Swain* stands for the rule that a California habeas petition must state "with particularity the facts" upon which relief is sought. 209 P.2d at 796. *Duvall* re-asserts the requirement that facts be stated fully and with particularity and stands for the additional proposition that documentary evidence must be provided. 886 P.2d at 1258 (stating that habeas petitions "should both (i) state fully and with particularity the facts on which relief is sought as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations" (citations omitted)).

Kaplon then raised the same claims in a second *pro se* habeas petition in the superior court. The superior court dismissed this petition on the same procedural grounds on September 6, 2013. Kaplon then raised the claims in a *pro se* habeas petition and supplemental habeas petition[3] in the Court of Appeal, which was denied without comment on July 18, 2013. Finally, Kaplon raised the claims in a *pro se* habeas petition in the Supreme Court, which was denied on

---

[3]     The supplemental habeas petition solely includes the DNA report of the samples found on the victim.

November 13, 2013, with citation to *In re Swain*, 209 P.2d at 796, and *In re Duvall*, 886 P.2d at 1258.

Kaplon then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on March 7, 2014.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Kaplon raises the following four claims that he unsuccessfully raised in his habeas petitions to the state courts: 1) the trial court erred in denying his motion for a change of venue and trial counsel was ineffective for failing to renew the motion after voir dire; 2) DNA evidence found on the victim did not match his DNA profile; 3) he had a conflict of interest with his attorney's investigator; and 4) he was purposely walked in front of the jury in shackles.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear

and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Kaplon has not replied to Respondent's answer.  The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."  28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952).  Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

IV. DISCUSSION

Respondent contends that Kaplon's Petition should be dismissed because all of the asserted claims are procedurally defaulted.  Respondent points out that, in denying Kaplon's state habeas claims, the state court cited *Swain* and *Duvall*.  After reviewing the facts and applicable law, the Court agrees that the nature of the procedural bar means that the claims fail to meet the exhaustion requirement because they have not been "fairly presented" to the state courts.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims."  *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992).  "The state-law claim may be a substantive rule dispositive of

8

the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 131 S. Ct. 1120, 1127 (2011). Procedural default does not preclude federal habeas review unless the last state court rendering judgment in a case "clearly and expressly" states that its judgment rests on a state procedural bar. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (quoting *Harris v. Reed*, 489 U.S. 255, 262-63 (1989)). "In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default." *Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

Under California law, a citation to *People v. Duvall* indicates that a petitioner has failed to state his claim with sufficient particularity for the state court to examine the merits of the claim, and/or has failed to "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." 886 P.2d at 1258. Like *Duvall*, a citation to *Swain* stands for the proposition that a petitioner has failed to state his claim with sufficient particularity. 209 P.2d at 796.

If a petition is dismissed for failure to state the facts with particularity—that is, with a cite to *Swain*—the petitioner may file a new petition curing the defect. *See Gaston v. Palmer*, 417 F.3d 1030, 1037 (9th Cir. 2005); *see Kim v. Villalobos*, 799 F.2d 1317, 1319 (9th Cir. 1986). In *Kim*, 799 F.2d at 1319, the Ninth Circuit found that the *Swain* citation indicated that the claims were unexhausted because their pleadings defects, i.e., lack of particularity, could be cured in a renewed petition. It therefore appears that the California courts would have allowed Kaplon to file a new state petition remedying these defects. Accordingly, the *Duvall/Swain* bar did not cause these claims to be procedurally defaulted in state court and thus this bar does not

cause them to be procedurally defaulted in federal court either.  *See Cross v. Sisto*, 676 F.3d 1172, 1177 (9th Cir. 2012) (California state court's denial of petitioner's habeas petition with citation to *Swain* constituted dismissal without prejudice and with leave to amend to plead required facts with particularity and thus did not signify that petitioner's claims were procedurally barred as a matter of state law).

However, in *Kim*, the Ninth Circuit also stated that it was "incumbent" on the district court, in determining whether the federal standard of "fair presentation" of a claim to the state courts had been met, to independently examine Kim's petition to the California Supreme Court. 799 F.3d at 1320.  "The mere recitation of *In re Swain* does not preclude such review." *Id.*  A review of Kaplon's state petition here shows, as Respondent has noted, that Kaplon failed to recite sufficient facts to address his claims.  For example, Kaplon's first claim in the Petition states only that: "My change of venue was wrongfully denied.  My attorney also failed to renew the motion after voir dire."  In his state habeas petition to the Supreme Court, Kaplon merely alleged, "My attorney, Andrew Marx, failed to renew a motion for change in venue, in which the judge originally denied without prejudice but maintained the option of revisiting the issue before trial began."  A review of the record reveals that each claim is tersely presented, without factual detail or elaboration, in both the instant Petition and in the unsuccessful habeas petition to the state supreme court.

Accordingly, the California Supreme Court's denial of his claims with citations to *Swain* and *Duvall* indicates that Kaplon's claims were not "fairly presented" to the state high court and that Kaplon could have re-submitted a state habeas petition with greater specificity but did not.

Kaplon's failure to do so means that his claims are unexhausted.[4]  *See Rose v. Palmateer*, 395

F.3d 1108, 1111 (9th Cir. 2005) (stating federal nature of claim must be pled with specificity

before state courts and substance of alleged violation must be pled with some particularity in

order to satisfy exhaustion requirement); *see also Picard v. Connor*, 404 U.S. 270, 278 (1971)

(holding that the substance of a federal habeas corpus claim must first be presented to the state

courts).  Accordingly, Kaplon's claims must be denied on that ground.[5]

---

[4]        The only claim that Kaplon fairly presented to the state courts on direct appeal is his claim that the trial court erred in denying his motion to change venue.  However, the Court of Appeal rejected that claim due to counsel's failure to renew the motion after jury selection. *Kaplon*, 2013 WL 120847, *4; *see also People v. Hoover*, 231 Cal. Rptr. 203, 210 (Cal. Ct. App. 1986) (failure to renew venue motion after jury selection is waiver of the claim).  California's practice in this regard is "firmly established and regularly followed."  *Rupe v. Borg*, 996 F.3d 1227, at *4 (9th Cir. May 20, 1993) (unpublished disposition).  Accordingly, because the state appellate court found Kaplon's claim forfeited, the claim is procedurally defaulted from federal habeas review.  *Coleman*, 501 U.S. at 729-30; *see also Rupe*, 996 F.3d 1227.  Although Kaplon argues that counsel's failure to renew the motion constituted ineffective assistance, which could theoretically constitute "cause" sufficient to excuse the procedural default, *see Coleman*, 501 U.S. at 750, again, Kaplon did not fairly present his ineffective assistance claim to the state courts or to this Court and therefore does not establish the requisite cause.

[5]        Because there is no strict time limit for filing a state habeas petition in California, it appears that Kaplon could still adequately present his claims to the state court.  *See In re Clark*, 855 P.2d 729, 764 (Cal. 1993).  This Court could therefore stay the Petition and allow Kaplon to return to state court to satisfy the exhaustion requirement.  *See Mena v. Long*, 813 F.3d 907, 911 (9th Cir. 2016).  However, Kaplon has not requested that this Court stay and hold his petition in abeyance.  Moreover, the Supreme Court has held that it is an abuse of discretion to stay a petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claims are "plainly meritless."  *Rhines v. Weber*, 544 U.S. 269, 277 (2005).  District courts within the Ninth Circuit have found "good cause" to require at a minimum a showing of some "circumstance over which [petitioner] had little or no control" that prevented the petitioner from asserted the unexhausted claims in state court.  *Ringer v. Crawford*, 415 F. Supp. 2d 1207, 1211 (E.D. Nev. 2006); *see also Hernandez v. Sullivan*, 397 F. Supp. 2d 1205, 1207 (C.D. Cal. 2005) (adopting the "good cause" standard of procedural defaults in which "a petitioner ordinarily must show that the default resulted from an objective factor external to the petitioner which cannot fairly be attributed to him").  Kaplon does not reply to Respondent's opposition, and therefore does not make any argument regarding or showing of good cause.  Accordingly, the Court finds that

Moreover, the lack of particularity also bars any meaningful review in federal court, independent of his failure to fairly present the claims to the state courts.  *Pro se* habeas filings must be construed liberally.  *See Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006) ("We must construe pro se habeas filings liberally.") (internal quotation marks and citations omitted). However, "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."  *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Jones v. Gomez*, 66 F.3d 199, 204-205 (9th Cir. 1995); *Greenway v. Schriro*, 653 F.3d 790, 804 (9th Cir. 2011) ("[C]ursory and vague claim[s] cannot support habeas relief.").  A petitioner must state his claims with sufficient specificity.  *See Wacht v. Cardwell*, 604 F.2d 1245, 1246-47 (9th Cir. 1979); *see also Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) ("the petition is expected to state facts that point to a real possibility of constitutional error") (citation omitted) (internal quotation marks omitted).

Likewise, allegations such as Kaplon's which are not supported by reference to the record or elaboration of facts also fail to meet the requirement of Habeas Corpus Rule 2(c) that a petitioner "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground."  *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005); *Greenway v. Schriro*, 653 F.3d 790, 804 (9th Cir. 2011); *Jones*, 66 F.3d at 204-05; *see also Premo v. Moore*, 131 S. Ct. 733, 741-42 (2011).  Kaplon's Petition fails to abide by these requirements.  Kaplon's failure to plead his claims with sufficient specificity precludes meaningful federal habeas review, and he is therefore not entitled to relief on any ground raised in his Petition.

---

Kaplon has not demonstrated good cause for his failure to exhaust.  The Court therefore declines to exercise its discretion to stay the Petition and hold it in abeyance while Kaplon returns to state court to exhaust his claims.  *See Rhines*, 544 U.S. at 275.

## V. CONCLUSION AND ORDER

Kaplon is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: January 12, 2017.

_____/s/James K. Singleton, Jr._____
JAMES K. SINGLETON, JR.
Senior United States District Judge

13